**KUTAK ROCK LLP**
Michael A. Condyles (VSB # 27807)
Jeremy S. Williams (VSB # 77469)
Ellen L. Valentine (VSB # 81038)
1111 East Main Street, Suite 800
Richmond, Virginia 23219
(804) 644-1700
*Counsel to Union First Market Bank, successor*

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF VIRGINIA
### Richmond Division

IN RE: JAMES ONEIL BEALE                      Case No. 12-37076-KRH
                                              Chapter 13
                        Debtors.

_____

UNION FIRST MARKET BANK, successor

                        Movant,

v.

JAMES ONEIL BEALE, and
ROBERT E. HYMAN, TRUSTEE,

                        Respondents.

### MOTION FOR RELIEF FROM AUTOMATIC STAY AND
### NOTICE OF MOTION AND NOTICE OF HEARING

Union First Market Bank, successor ("Union"), by counsel, hereby moves this Court,

pursuant to 11 U.S.C. §§ 362(d) and Rules 4001(a) and 9013 of the Federal Rules of Bankruptcy

Procedure to terminate the automatic stay as to Union, and in support thereof Union states as

follows:

#### The Parties

1.    James Oneil Beale (the "Debtor") initiated this bankruptcy proceeding by filing a

voluntary petition under Chapter 13 of the Bankruptcy Code on December 13, 2012.

2.    Union is a financial institution engaged in the business of making loans.

1

3.      Robert E. Hyman was appointed trustee of the Debtors' bankruptcy estate and is currently serving the estate in this capacity.

## Jurisdiction and Venue

4.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1334 and 28 U.S.C. §157.  This is a core proceeding pursuant to 28 U.S.C. §157(b)(2).

5.      Venue is appropriate in this Court pursuant to 28 U.S.C. §1409.

## Factual Background

6.      The Debtors are indebted to Union in connection with a Promissory Note dated October 31, 2006 in the original principal amount of $112,000.00  (the "Note").  A copy of the Note is attached hereto as **Exhibit A**.

7.      As security for the Note, the Debtor executed a Deed of Trust dated October 31, 2006 and recorded November 6, 2006 as Instrument No. 060003407 in the Clerk's office for the Circuit Court of Lancaster County (the "Deed of Trust").  Pursuant to the Deed of Trust, the Debtor granted Union a properly perfected lien against certain real property commonly known as 851 Weems Road, Weems, Virginia (the "Property") and as more specifically described as follows:

> ALL THAT CERTAIN LOT OR PARCEL OF LAND, CONTAINING 1.219 ACRES, MORE OR LESS, TOGETHER WITH ALL IMPROVEMENTS THEREON AND ALL RIGHTS, WAYS, PRIVILEGES AND APPURTENANCES IN ANYWISE THEREUNTO APPERTAINING, SITUATE, LYING AND BEING ON THE SOUTH SIDE OF WEEMS ROAD, STATE HIGHWAY ROUTE NO. 222, IN WHITE STONE MAGISTERIAL DISTRICT, LANCASTER COUNTY, VIRGINIA, AS SHOWN ON THAT CERTAIN PLAT OF SURVEY ENTITLED "PLAT SHOWING PHYSICAL IMPROVEMENTS TO PROPERTY TO BE CONVEYED TO JAMES O. BEALE", MADE BY SIMMONS NEWSOME, P.C., DATED JUNE 23, 2005, WHICH PLAT IS RECORDED IN THE CLERK'S OFFICE OF THE CIRCUIT COURT OF

4816-3832-4755.1

LANCASTER COUNTY, VIRGINIA, IN INSTRUMENT #050002191 AT PAGE 3.

BEING THE SAME PROPERTY CONVEYED UNTO JAMES O. BEALE BY DEED DATED JUNE 27, 2005 AND RECORDED IN THE AFORESAID CLERK'S OFFICE IN INSTRUMENT #050002191.

The Deed of Trust is attached hereto as **Exhibit B.**

8.     On December 27, 2012, the Debtor filed an amended Chapter 13 Plan [Docket No. 9] (the "Plan"), whereby the Debtor proposed to make direct regular monthly payments to Union and cure then $9,000.00 arrearage over a period of 25 months.  The Plan was confirmed on February 28, 2013.

9.      Despite having a confirmed Plan requiring the Debtor to make regular monthly payments directly to Union on the first day of each month and to make arrearage payments to the Trustee, the Debtor has failed to do so.

10.     In fact, no payments, including any form of adequate protection payments, have been received since May 2012 and the Debtor is a year behind on the payments due under the Note.  The balance due and owing under the Note is no less than $114,336.69 as of March 12, 2013.

11.     Pursuant to Schedule A, the value of the Property is $114,600.00.

## ARGUMENT

### Relief from Automatic Stay

12.     Union seeks relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(1). The failure of the Debtors to make the required payments pursuant to the Plan constitutes "cause" to grant relief from the automatic stay under 362(d)(1).  *See, e.g., In re Uvaydov,* 354 B.R. 620 (Bankr. E.D.N.Y. 2006)(*citing Equitable Life Assurance Soc'y v. James River Assoc.*

3

*(In re James River Assoc.)*, 148 B.R. 790, 797 (E.D. Va. 1992)); *In re Smith*, 104 B.R. 695 (Bankr. E.D. Pa. 1989); *Matter of Quinlan,* 12 B.R. 516, 517 (Bankr. W.D. Wis. 1981) (unexcused failure to make payments pursuant to confirmed Chapter 13 plan constitutes material default which is "cause for relief from stay").  The failure of the Debtors to make their payments pursuant to the Plan is a substantial default and thus, cause for relief from the automatic stay.

13.    Although the Debtor passed the feasibility test to make the regular monthly payments and the Plan was confirmed based on the ability of the Debtor to make these payments pursuant to 11 U.S.C. § 1325(a)(6), these payments are not being provided to Union.

14.    There exists the principal that "lack of adequate protection is but one [form of] 'cause' [for] which relief can be granted under § 362(d)(1)." *Citizens Fidelity Bank & Trust Co. v. Family Inv., Inc. (In re Family Inv., Inc.)*, 8 B.R. 572, 576 (Bankr. W.D.K.Y. 1981).  Thus, failure to make plan payments is itself sufficient cause under 11 U.S.C. § 362(d)(1).

15.    Since the Debtor fails to make the required payments, relief from the automatic stay should be granted.  *See In re Ellis*, 60 B.R. 432, 434 (B.A.P. 9th Cir. 1985); *In re Binder*, 224 B.R. 483, 490 (Bankr. D. Colo. 1998); *In re Smith*, 104 B.R. at 700 (Bankr. E.D. Pa. 1989).

16.    Union is further entitled to relief from stay under 11 U.S.C. § 362(d)(2).  The Debtor lacks equity in the Property and such Property is not necessary for an effective reorganization.

17.    The failure of the Debtor to make the required payments to Union constitutes "cause" under § 362(d)(1) and the lack of equity and necessity for reorganization under § 362(d)(2) entitles Union to relief from the automatic stay imposed by §362(a).

4816-3832-4755.1

**WHEREFORE,** Union respectfully requests that this Court enter an Order (i) granting

relief from the automatic stay pursuant to § 362(d); and (ii) granting such further relief as may be

deemed just.

**UNION FIRST MARKET BANK, successor**

By: /s/ Jeremy S. Williams          

**KUTAK ROCK LLP**
Michael A. Condyles (VSB # 27807)
Jeremy S. Williams (VSB # 77469)
Ellen L. Valentine (VSB # 81038)
1111 East Main Street, Suite 800
Richmond, Virginia 23219
(804) 644-1700
*Counsel to Union First Market Bank, successor*

4816-3832-4755.1

**KUTAK ROCK LLP**
Michael A. Condyles (VSB # 27807)
Jeremy S. Williams (VSB # 77469)
Ellen L. Valentine (VSB # 81038)
1111 East Main Street, Suite 800
Richmond, Virginia 23219
(804) 644-1700
*Counsel to Union First Market Bank, successor*

## UNITED STATES BANKRUPTCY COURT
### EASTERN DISTRICT OF VIRGINIA
**Richmond Division**

IN RE: JAMES ONEIL BEALE                     Case No. 12-37076-KRH
                                             Chapter 13
                        Debtors.

---

UNION FIRST MARKET BANK, successor

                        Movant,

v.

JAMES ONEIL BEALE, and
ROBERT E. HYMAN, TRUSTEE,

## <u>NOTICE OF MOTION AND NOTICE OF HEARING</u>

***Your rights may be affected***.  You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case.  (If you do not have an attorney, you may wish to consult one).  If you do not want the court to grant the relief sought in the motion, or if you want the court to consider your views, **then on or before fourteen (14) days after service of the motion**, you or your attorney must:

1.      File with the Court, at the address shown below, a written response pursuant to Local Bankruptcy Rule 4001 and 9013.  If you mail your response to the court for filing, you must mail it early enough so that the court will receive it on or before the date stated above.  Your mailing should be directed to:

> Clerk of the Court
> United States Bankruptcy Court
> 701 E. Broad Street
> Richmond, VA  23219

4816-3832-4755.1

2.      You must also mail a copy to:

Jeremy S. Williams, Esq.
Kutak Rock, LLP
1111 East Main Street, Suite 800
Richmond, VA  23219

Robert E. Hyman, Esq., Trustee
P.O. Box 1780
Richmond, VA  23218

3.      You must also attend the hearing to consider the relief sought in addition to filing a written objection.  Unless a written response is filed and served within this 14-day period, the Court may deem opposition waived, treat the motion as conceded, and issue an order granting the requested relief without further notice or hearing.  Also, if you fail to file timely a written response and to attend the hearing even if a response is timely filed, the Court may consider any objection you may have waived and enter an Order granting the relief requested.  The hearing is scheduled for **May 8, 2013 at 9:30 a.m.**, at the United States Bankruptcy Court, 701 East Broad Street, Room 5000, Richmond, VA  23219.

**UNION FIRST MARKET BANK, successor**

By: /s/ Jeremy S. Williams_____

_____
**KUTAK ROCK LLP**
Michael A. Condyles  (VSB No. 27807)
Jeremy S. Williams (VSB No. 77469)
Ellen L. Valentine (VSB No. 81038)
1111 East Main Street, Suite 800
Richmond, VA  23219-3500
(804) 644-1700
 *Counsel for Union First Market Bank, successor*

4816-3832-4755.1

## CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on April 5, 2013, a true and exact copy of the foregoing Motion and Notice was served via CM/ECF or mailed, first class mail with postage fully prepaid, to the following necessary parties:

*Debtor:*
James Oneil Beale
P.O. Box 215
Kilmarnock, Virginia 22482

*Counsel for Debtor:*
Jessica L. Fellows
America Law Group Inc.
7825 Midlothian Turnpike, Suite 104
Richmond, Virginia 23235
Fellows.jl@gmail.com

*Chapter 13 Trustee:*
Robert E. Hyman
P.O. Box 1780
Richmond, VA 23218

*United States Trustee*
Robert B. Van Arsdale, Esq.
United States Courthouse
701 East Broad Street, Suite 4304
Richmond, VA 23219

/s/ Jeremy S. Williams
Counsel

8



## PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $112,000.00 | 10-31-2006 | 11-01-2036 | 0465 | 1C2 / R9161 | | NBN | |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

Borrower:  JAMES O. BEALE (SSN: _____
            PO BOX 215
            KILMARNOCK, VA 22482

Lender:   Northern Neck State Bank
          Kilmarnock Office
          284 North Main Street
          P. O. Box 2036
          Kilmarnock, VA 22482-2036
          (804) 435-2681

---

Principal Amount: $112,000.00                                                    Date of Note: October 31, 2006

PROMISE TO PAY. I ("Borrower") promise to pay to Northern Neck State Bank ("Lender"), or order, in lawful money of the United States of America, the principal amount of One Hundred Twelve Thousand & 00/100 Dollars ($112,000.00), together with interest on the unpaid principal balance from November 6, 2006, until paid in full.

PAYMENT. Subject to any payment changes resulting from changes in the Index, I will pay this loan in accordance with the following payment schedule: 84 monthly consecutive principal and interest payments in the initial amount of $763.28 each, beginning December 1, 2006, with interest calculated on the unpaid principal balances at an initial discounted interest rate of 7.250% per annum; 276 monthly consecutive principal and interest payments in the initial amount of $874.53 each, beginning December 1, 2013, with interest calculated on the unpaid principal balances at an interest rate based on the Weekly Average Yield on the United States Treasury Securities, adjusted to a Constant Maturity of One (1) Year (currently 5.050%), plus a margin of 3.875%, resulting in an initial interest rate of 8.925%; and one principal and interest payment of $868.02 on November 1, 2036, with interest calculated on the unpaid principal balances at an interest rate based on the Weekly Average Yield on the United States Treasury Securities, adjusted to a Constant Maturity of One (1) Year (currently 5.050%), plus a margin of 3.875%, resulting in an initial interest rate of 8.925%. This estimated final payment is based on the assumption that all payments will be made exactly as scheduled and that the Index does not change; the actual final payment will be for all principal and accrued interest not yet paid, together with any other unpaid amounts under this Note. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any unpaid collection costs. Interest on this Note is computed on a 30/360 simple interest basis; that is, with the exception of odd days in the first payment period, monthly interest is calculated by applying the ratio of the annual interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by a month of 30 days. Interest for the odd days is calculated on the basis of the actual days to the next full month and a 360-day year. I will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

VARIABLE INTEREST RATE. For the first 84 payments, the interest rate on this loan will be 7.250%. Thereafter, the interest rate on this Note is subject to change from time to time based on changes in an independent index which is the Weekly Average Yield on the United States Treasury Securities, adjusted to a Constant Maturity of One (1) Year (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans. If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notifying me. Lender will tell me the current Index rate upon my request. The interest rate change will not occur more often than each anniversary date of the Note. I understand that Lender may make loans based on other rates as well. The Index currently is 5.060% per annum. The interest rate or rates to be applied to the unpaid principal balance during this Note will be the rate or rates set forth herein in the "Payment" section. Notwithstanding any other provision of this Note, after the last payment stream, the interest rate for each subsequent payment stream will be effective as of the last payment date of the just-ending payment stream. NOTICE: Under no circumstances will the interest rate on this Note be less than 3.875% per annum or more than the lesser of 12.250% per annum or the maximum rate allowed by applicable law. Notwithstanding the above provisions, the maximum increase or decrease in the interest rate at any one time on this loan will not exceed 2.000 percentage points. Unless waived by Lender, any increase in the interest rate will increase the amounts of my payments.

PREPAYMENT; MINIMUM INTEREST CHARGE. I agree that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be refunded to me upon early payment (whether voluntary or as a result of default), except as otherwise required by law. In any event, even upon full prepayment of this Note, I understand that Lender is entitled to a minimum interest charge of $75.00. Other than my obligation to pay any minimum interest charge, I may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve me of my obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in my making fewer payments. I agree not to send Lender payments marked "paid in full", "without recourse", or similar language. If I send such a payment, Lender may accept it without losing any of Lender's rights under this Note, and I will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: Northern Neck State Bank, 5839 Richmond Road Warsaw, VA 22572-0068.

LATE CHARGE. If a payment is 11 days or more late, I will be charged 5.000% of the regularly scheduled payment.

INTEREST AFTER DEFAULT. Upon default, including failure to pay upon final maturity, the interest rate on this Note shall be increased to 24.000% per annum. However, in no event will the interest rate exceed the maximum interest rate limitations under applicable law.

DEFAULT. I will be in default under this Note if any of the following happen:

Payment Default. I fail to make any payment when due under this Note.

Break Other Promises. I break any promise made to Lender or fail to perform promptly at the time and strictly in the manner provided in this Note or in any agreement related to this Note, or in any other agreement or loan I have with Lender.

Default in Favor of Third Parties. I or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of my property or my ability to repay this Note or perform my obligations under this Note or any of the related documents.

False Statements. Any representation or statement made or furnished to Lender by me or on my behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished.

Death or Insolvency. Any Borrower dies or becomes insolvent; a receiver is appointed for any part of my property; I make an assignment for the benefit of creditors; or any proceeding is commenced either by me or against me under any bankruptcy or insolvency laws.

Taking of the Property. Any creditor or governmental agency tries to take any of the property or any other of my property in which Lender has a lien. This includes taking of, garnishing of or levying on my accounts with Lender. However, if I dispute in good faith whether the claim on which the taking of the property is based is valid or reasonable, and if I give Lender written notice of the claim and furnish Lender with monies or a surety bond satisfactory to Lender to satisfy the claim, then this default provision will not apply.

Defective Collateralization. This Note or any of the related documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

Collateral Damage or Loss. Any collateral securing this Note is lost, stolen, substantially damaged or destroyed and the loss, theft, substantial damage or destruction is not covered by insurance.

Events Affecting Guarantor. Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

LENDER'S RIGHTS. Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest, together with all other applicable fees, costs and charges, if any, immediately due and payable, and then I will pay that amount.

ATTORNEYS' FEES; EXPENSES. Subject to any limits under applicable law, upon default, I agree to pay Lender's attorneys' fees and all of Lender's other collection expenses, whether or not there is a lawsuit, including legal expenses for bankruptcy proceedings.

HOMESTEAD WAIVER. I, to the extent permitted by law, hereby waive my homestead exemption with respect to all property subject to any security interest or lien granted to secure this loan

JURY WAIVER. Lender and I hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or me against the other.



**PROMISSORY NOTE**
(Continued)

Loan No: ▮0465

Page 2

**GOVERNING LAW.** This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the Commonwealth of Virginia without regard to its conflicts of law provisions. This Note has been accepted by Lender in the Commonwealth of Virginia.

**CHOICE OF VENUE.** If there is a lawsuit, I agree upon Lender's request to submit to the jurisdiction of the applicable courts for Caroline County, Commonwealth of Virginia.

**DISHONORED ITEM FEE.** I will pay a fee to Lender of $25.00 if I make a payment on my loan and the check or preauthorized charge with which I pay is later dishonored.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all my accounts with Lender (whether checking, savings, or some other account). This includes all accounts I hold jointly with someone else and all accounts I may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. I authorize Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts.

**COLLATERAL.** I acknowledge this Note is secured by the following collateral described in the security instruments listed herein:

(A) a Deed of Trust dated October 31, 2006, to a trustee in favor of Lender on real property located in Lancaster County, Commonwealth of Virginia. The Real Property or its address is commonly known as 851 WEEMS RD., WEEMS, VA 22576.

(B) a mobile home described in a Consumer Security Agreement dated October 31, 2006.

**INITIAL ADJUSTMENT INCREASE.** Notwithstanding anything herein to the contrary, under this ARM program, the interest rate increase on the first interest rate adjustment will not exceed 5.000 percentage points over the initial interest rate. All subsequent interest rate adjustments will not exceed 2.000 percentage points per adjustment for the remaining term of the loan.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon me, and upon my heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES.** Please notify us if we report any inaccurate information about your account(s) to a consumer reporting agency. Your written notice describing the specific inaccuracy(ies) should be sent to us at the following address: Northern Neck State Bank 5839 Richmond Road Warsaw, VA 22572-0068.

**GENERAL PROVISIONS.** If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. I and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made.

PRIOR TO SIGNING THIS NOTE, I READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. I AGREE TO THE TERMS OF THE NOTE.

I ACKNOWLEDGE RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

**NOTICE:** ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

THIS NOTE IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS NOTE IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.

BORROWER:

X _____ (Seal)
   JAMES D. BEALE

060003407

RECORDATION REQUESTED BY:
 Northern Neck State Bank
 Kilmarnock Office
 284 North Main Street
 P. O. Box 2036
 Kilmarnock, VA  22482-2036

WHEN RECORDED MAIL TO:
 Northern Neck State Bank
 Kilmarnock Office
 284 North Main Street
 P. O. Box 2036
 Kilmarnock, VA  22482-2036

SEND TAX NOTICES TO:
 Northern Neck State Bank
 Kilmarnock Office
 284 North Main Street
 P. O. Box 2036
 Kilmarnock, VA  22482-2036

Tax Map Reference No(s): 27-284A                    FOR RECORDER'S USE ONLY

---

This Deed of Trust prepared by:   Real Estate Department, Northern Neck State Bank

**NORTHERN NECK** *State Bank*

## DEED OF TRUST

### Name and address of Noteholder secured hereby:

**Northern Neck State Bank**
**Kilmarnock Office**
**284 North Main Street**
**P. O. Box 2036**
**Kilmarnock, VA  22482-2036**

MAXIMUM LIEN.  The maximum principal amount secured by this Deed of Trust is $112,000.00.

THIS DEED OF TRUST is dated October 31, 2006, among JAMES O. BEALE, whose address is PO BOX 215, KILMARNOCK, VA  22482 ("Grantor"); Northern Neck State Bank, whose address is Kilmarnock Office, 284 North Main Street, P. O. Box 2036, Kilmarnock, VA  22482-2036 (referred to below sometimes as "Lender" and sometimes as "Beneficiary"); and Michael A. CONDYLES, a resident of Virginia, whose address is 1111 East Main Street, Suite 800, Richmond, VA  23219-3103, N. Byrd NEWTON, a resident of Virginia, whose address is P. O. Box 68, Warsaw, VA  22572 and Russell G. BROWN, a resident of Virginia, whose address is P. O. Box 68, Warsaw, VA  22572 ("Grantee," also referred to below as "Trustee"), either of whom may act.

CONVEYANCE AND GRANT.  For valuable consideration, Grantor conveys, transfers, encumbers and pledges and assigns to Trustee for the benefit of Lender as Beneficiary, all of Grantor's present and future right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; and all rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, (the "Real Property") located in Lancaster County, Commonwealth of Virginia:

SEE ATTACHED SCHEDULE A

The Real Property or its address is commonly known as 851 WEEMS RD., WEEMS, VA  22576.  The Real Property Tax Map Reference No(s) is/are 27-284A.

Grantor presently, absolutely, and irrevocably assigns to Lender (also known as Beneficiary in this Deed of Trust) all of Grantor's right, title, and interest in and to all present and future leases of the Property and all Rents from the Property.  In addition, Grantor grants to Lender a Uniform Commercial Code



DEED OF TRUST
(Continued)

Loan No: ███0465

Page 2

security interest in the Personal Property and Rents.

THIS DEED OF TRUST, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE   (A)   PAYMENT OF THE INDEBTEDNESS AND   (B)   PERFORMANCE OF ANY AND ALL OBLIGATIONS UNDER THE NOTE, THE RELATED DOCUMENTS, AND THIS DEED OF TRUST.   THIS DEED OF TRUST IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:

**PAYMENT AND PERFORMANCE.** Except as otherwise provided in this Deed of Trust, Grantor shall pay to Lender all amounts secured by this Deed of Trust as they become due, and shall strictly and in a timely manner perform all of Grantor's obligations under the Note, this Deed of Trust, and the Related Documents.

**POSSESSION AND MAINTENANCE OF THE PROPERTY.** Grantor agrees that Grantor's possession and use of the Property shall be governed by the following provisions:

**Possession and Use.**  Until the occurrence of an Event of Default, Grantor may   (1)   remain in possession and control of the Property;   (2)   use, operate or manage the Property; and   (3)   acting as Lender's agent, collect the Rents from the Property.

**Duty to Maintain.**  Grantor shall maintain the Property in good condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

**Compliance With Environmental Laws.**  Grantor represents and warrants to Lender that:   (1)   During the period of Grantor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from the Property;   (2)   Grantor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing,   (a)   any breach or violation of any Environmental Laws,   (b)   any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Property by any prior owners or occupants of the Property, or   (c)   any actual or threatened litigation or claims of any kind by any person relating to such matters; and   (3)   Except as previously disclosed to and acknowledged by Lender in writing,   (a)   neither Grantor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from the Property; and   (b)   any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation all Environmental Laws.  Grantor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Grantor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Deed of Trust.  Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Grantor or to any other person.  The representations and warranties contained herein are based on Grantor's due diligence in investigating the Property for Hazardous Substances.  Grantor hereby   (1)   releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any such laws; and   (2)   agrees to indemnify, defend, and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Deed of Trust or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Grantor's ownership or interest in the Property, whether or not the same was or should have been known to Grantor.  The provisions of this section of the Deed of Trust, including the obligation to indemnify and defend, shall survive the payment of the Indebtedness and the satisfaction and reconveyance of the lien of this Deed of Trust and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

**Nuisance, Waste.**  Grantor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property.  Without limiting the generality of the foregoing, Grantor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, clay, scoria, soil, gravel or rock products without Lender's prior written consent.

**Removal of Improvements.**  Grantor shall not demolish or remove any Improvements from the Real Property without Lender's prior written consent.   As a condition to the removal of any Improvements, Lender may require Grantor to make arrangements satisfactory to Lender to replace such Improvements with Improvements of at least equal value.

**Lender's Right to Enter.**  Lender and Lender's agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Real Property for purposes of Grantor's compliance with the terms and conditions of this Deed of Trust.

**DEED OF TRUST**

Loan No: ▓▓0465                                    (Continued)                                    Page 3

Compliance with Governmental Requirements. Grantor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property. Grantor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Grantor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized. Lender may require Grantor to post adequate security or a surety bond, satisfactory to Lender, to protect Lender's interest.

Duty to Protect. Grantor agrees neither to abandon or leave unattended the Property. Grantor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are necessary to protect and preserve the Property.

DUE ON SALE - CONSENT BY LENDER. NOTICE - THE DEBT SECURED HEREBY IS SUBJECT TO CALL IN FULL OR THE TERMS THEREOF BEING MODIFIED IN THE EVENT OF SALE OR CONVEYANCE OF THE PROPERTY CONVEYED. Lender may, at Lender's option, declare immediately due and payable all sums secured by this Deed of Trust upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property. However, this option shall not be exercised by Lender if such exercise is prohibited by federal law or by Virginia law.

TAXES AND LIENS. The following provisions relating to the taxes and liens on the Property are part of this Deed of Trust:

Payment. Grantor shall pay when due (and in all events prior to delinquency) all taxes, special taxes, assessments, charges (including water and sewer), fines and impositions levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Grantor shall maintain the Property free of all liens having priority over or equal to the interest of Lender under this Deed of Trust, except for the lien of taxes and assessments not due and except as otherwise provided in this Deed of Trust.

Right to Contest. Grantor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized. If a lien arises or is filed as a result of nonpayment, Grantor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Grantor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and attorneys' fees, or other charges that could accrue as a result of a foreclosure or sale under the lien. In any contest, Grantor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

Evidence of Payment. Grantor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

Notice of Construction. Grantor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials and the cost exceeds $1,000.00. Grantor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Grantor can and will pay the cost of such improvements.

PROPERTY DAMAGE INSURANCE. The following provisions relating to insuring the Property are a part of this Deed of Trust.

Maintenance of Insurance. Grantor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a replacement basis for the full insurable value covering all improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender, together with such other hazard and liability insurance as Lender may require. Policies shall be written in form, amounts, coverages and basis acceptable to Lender and issued by a company or companies acceptable to Lender. Grantor, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that

**DEED OF TRUST**
(Continued)

Loan No: ███0465

Page 4

coverages will not be cancelled or diminished without at least ten (10) days prior written notice to Lender. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. Should the Real Property be located in an area designated by the Director of the Federal Emergency Management Agency as a special flood hazard area, Grantor agrees to obtain and maintain Federal Flood Insurance, if available, within 45 days after notice is given by Lender that the Property is located in a special flood hazard area, for the full unpaid principal balance of the loan and any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan.

**Application of Proceeds.** Grantor shall promptly notify Lender of any loss or damage to the Property if the estimated cost of repair or replacement exceeds $1,000.00. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. Whether or not Lender's security is impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the Indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property. If Lender elects to apply the proceeds to restoration and repair, Grantor shall repair or replace the damaged or destroyed Improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration if Grantor is not in default under this Deed of Trust. Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Deed of Trust, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness. If Lender holds any proceeds after payment in full of the Indebtedness, such proceeds shall be paid to Grantor as Grantor's interests may appear.

**TAX AND INSURANCE RESERVES.** Subject to any limitations set by applicable law, Lender may require Grantor to maintain with Lender reserves for payment of annual taxes, assessments, and insurance premiums, which reserves shall be created by advance payment or monthly payments of a sum estimated by Lender to be sufficient to produce, amounts at least equal to the taxes, assessments, and insurance premiums to be paid. The reserve funds shall be held by Lender as a general deposit from Grantor, which Lender may satisfy by payment of the taxes, assessments, and insurance premiums required to be paid by Grantor as they become due. Lender shall have the right to draw upon the reserve funds to pay such items, and Lender shall not be required to determine the validity or accuracy of any item before paying it. Nothing in the Deed of Trust shall be construed as requiring Lender to advance other monies for such purposes, and Lender shall not incur any liability for anything it may do or omit to do with respect to the reserve account. All amounts in the reserve account are hereby pledged to further secure the Indebtedness, and Lender is hereby authorized to withdraw and apply such amounts on the Indebtedness upon the occurrence of an Event of Default. Lender shall not be required to pay any interest or earnings on the reserve funds unless required by law or agreed to by Lender in writing. Lender does not hold the reserve funds in trust for Grantor, and Lender is not Grantor's agent for payment of the taxes and assessments required to be paid by Grantor.

**LENDER'S EXPENDITURES.** If Grantor fails (A) to keep the Property free of all taxes, liens, security interests, encumbrances, and other claims, (B) to provide any required insurance on the Property, or (C) to make repairs to the Property then Lender may do so. If any action or proceeding is commenced that would materially affect Lender's interests in the Property, then Lender on Grantor's behalf may, but is not required to, take any action that Lender believes to be appropriate to protect Lender's interests. All expenses incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Deed of Trust also will secure payment of these amounts. The rights provided for in this paragraph shall be in addition to any other rights or any remedies to which Lender may be entitled on account of any default. Any such action by Lender shall not be construed as curing the default so as to bar Lender from any remedy that it otherwise would have had.

**WARRANTY; DEFENSE OF TITLE.** The following provisions relating to ownership of the Property are a part of this Deed of Trust:

**Title.** Grantor warrants generally that: (a) Grantor holds good and marketable title to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Deed of Trust, and (b) Grantor has the full

Loan No: ████0465

**DEED OF TRUST**
(Continued)

Page 5

right, power, and authority to execute and deliver this Deed of Trust to Lender.

**Defense of Title.** Subject to the exception in the paragraph above, Grantor warrants and will forever defend the title to the Property against the lawful claims of all persons. In the event any action or proceeding is commenced that questions Grantor's title or the interest of Trustee or Lender under this Deed of Trust, Grantor shall defend the action at Grantor's expense. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Grantor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

**Compliance With Laws.** Grantor warrants that the Property and Grantor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

**Survival of Promises.** All promises, agreements, and statements Grantor has made in this Deed of Trust shall survive the execution and delivery of this Deed of Trust, shall be continuing in nature and shall remain in full force and effect until such time as Grantor's Indebtedness is paid in full.

**CONDEMNATION.** The following provisions relating to condemnation proceedings are a part of this Deed of Trust:

**Proceedings.** If any proceeding in condemnation is filed, Grantor shall promptly notify Lender in writing, and Grantor shall promptly take such steps as may be necessary to defend the action and obtain the award. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Grantor will deliver or cause to be delivered to Lender such instruments and documentation as may be requested by Lender from time to time to permit such participation.

**Application of Net Proceeds.** If all or any part of the Property is condemned by eminent domain proceedings or by any proceeding or purchase in lieu of condemnation, Lender may at its election require that all or any portion of the net proceeds of the award be applied to the Indebtedness or the repair or restoration of the Property. The net proceeds of the award shall mean the award after payment of all reasonable costs, expenses, and attorneys' fees incurred by Trustee or Lender in connection with the condemnation.

**IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES.** The following provisions relating to governmental taxes, fees and charges are a part of this Deed of Trust:

**Current Taxes, Fees and Charges.** Upon request by Lender, Grantor shall execute such documents in addition to this Deed of Trust and take whatever other action is requested by Lender to perfect and continue Lender's lien on the Real Property. Grantor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Deed of Trust, including without limitation all taxes, fees, documentary stamps, and other charges for recording or registering this Deed of Trust.

**Taxes.** The following shall constitute taxes to which this section applies: (1) a specific tax upon this type of Deed of Trust or upon all or any part of the Indebtedness secured by this Deed of Trust; (2) a specific tax on Grantor which Grantor is authorized or required to deduct from payments on the Indebtedness secured by this type of Deed of Trust; (3) a tax on this type of Deed of Trust chargeable against the Lender or the holder of the Note; and (4) a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Grantor.

**Subsequent Taxes.** If any tax to which this section applies is enacted subsequent to the date of this Deed of Trust, this event shall have the same effect as an Event of Default, and Lender may exercise any or all of its available remedies for an Event of Default as provided below unless Grantor either (1) pays the tax before it becomes delinquent, or (2) contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

**SECURITY AGREEMENT; FINANCING STATEMENTS.** The following provisions relating to this Deed of Trust as a security agreement are a part of this Deed of Trust:

**Security Agreement.** This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

**Security Interest.** Upon request by Lender, Grantor shall take whatever action is requested by Lender to perfect and continue Lender's security interest in the Personal Property. In addition to recording this Deed of Trust in the real property records, Lender may, at any time and without further authorization from Grantor, file executed counterparts, copies or reproductions of this Deed of Trust as a financing statement. Grantor shall reimburse Lender for all expenses incurred in

DEED OF TRUST

Loan No: ███0465                    (Continued)                                      Page 6

perfecting or continuing this security interest. Upon default, Grantor shall not remove, sever or detach the Personal Property from the Property. Upon default, Grantor shall assemble any Personal Property not affixed to the Property in a manner and at a place convenient to Lender and make it available to Lender promptly following Lender's request to the extent permitted by applicable law.

**Addresses.** The mailing addresses of Grantor (debtor) and Lender (secured party) from which information concerning the security interest granted by this Deed of Trust may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of this Deed of Trust.

**FURTHER ASSURANCES; ATTORNEY-IN-FACT.** The following provisions relating to further assurances and attorney-in-fact are a part of this Deed of Trust:

**Further Assurances.** At any time, and from time to time, upon request of Lender, Grantor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (1) Grantor's obligations under the Note, this Deed of Trust, and the Related Documents, and (2) the liens and security interests created by this Deed of Trust as first and prior liens on the Property, whether now owned or hereafter acquired by Grantor. Unless prohibited by law or Lender agrees to the contrary in writing, Grantor shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

**Attorney-in-Fact.** If Grantor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Grantor and at Grantor's expense. For such purposes, Grantor hereby irrevocably appoints Lender as Grantor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.

**FULL PERFORMANCE.** If Grantor pays all the Indebtedness when due, and otherwise performs all the obligations imposed upon Grantor under this Deed of Trust, Lender shall execute and deliver to Trustee a request for full reconveyance and shall execute and deliver to Grantor suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property. Any reconveyance fee required by law shall be paid by Grantor, if permitted by applicable law.

**EVENTS OF DEFAULT.** At Lender's option, Grantor will be in default under this Deed of Trust if any of the following happen:

**Payment Default.** Grantor fails to make any payment when due under the Indebtedness.

**Break Other Promises.** Grantor breaks any promise made to Lender or fails to perform promptly at the time and strictly in the manner provided in this Deed of Trust or in any agreement related to this Deed of Trust.

**Compliance Default.** Failure to comply with any other term, obligation, covenant or condition contained in this Deed of Trust, the Note or in any of the Related Documents.

**Default on Other Payments.** Failure of Grantor within the time required by this Deed of Trust to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien.

**Default In Favor of Third Parties.** Should Grantor default under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Grantor's property or Grantor's ability to repay the Indebtedness or perform their respective obligations under this Deed of Trust or any of the Related Documents.

**False Statements.** Any representation or statement made or furnished to Lender by Grantor or on Grantor's behalf under this Deed of Trust or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished.

**Defective Collateralization.** This Deed of Trust or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Death or Insolvency.** The death of any Grantor, the insolvency of Grantor, the appointment of a receiver for any part of Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Grantor.

**DEED OF TRUST**
(Continued)

Loan No: ███0465

Page 7

**Taking of the Property.** Any creditor or governmental agency tries to take any of the Property or any other of Grantor's property in which Lender has a lien. This includes taking of, garnishing of or levying on Grantor's accounts with Lender. However, if Grantor disputes in good faith whether the claim on which the taking of the Property is based is valid or reasonable, and if Grantor gives Lender written notice of the claim and furnishes Lender with monies or a surety bond satisfactory to Lender to satisfy the claim, then this default provision will not apply.

**Breach of Other Agreement.** Any breach by Grantor under the terms of any other agreement between Grantor and Lender that is not remedied within any grace period provided therein, including without limitation any agreement concerning any indebtedness or other obligation of Grantor to Lender, whether existing now or later.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the Indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**RIGHTS AND REMEDIES ON DEFAULT.** If an Event of Default occurs under this Deed of Trust, at any time thereafter, Trustee or Lender may exercise any one or more of the following rights and remedies:

**Election of Remedies.** All of Lender's rights and remedies will be cumulative and may be exercised alone or together. An election by Lender to choose any one remedy will not bar Lender from using any other remedy. If Lender decides to spend money or to perform any of Grantor's obligations under this Deed of Trust, after Grantor's failure to do so, that decision by Lender will not affect Lender's right to declare Grantor in default and to exercise Lender's remedies.

**Accelerate Indebtedness.** Lender shall have the right at its option without notice to Grantor to declare the entire Indebtedness immediately due and payable, including any prepayment penalty which Grantor would be required to pay. This right is in addition to all other rights given to holders of promissory notes under Title 55 of the Code of Virginia.

**Foreclosure.** With respect to all or any part of the Real Property, the Trustee shall have the right to foreclose by notice and sale, and Lender shall have the right to foreclose by judicial foreclosure, in either case in accordance with and to the full extent provided by applicable law. Grantor expressly waives and releases any requirement or obligation that Lender or Trustee present evidence or otherwise proceed before any court or other judicial or quasi-judicial body as a precondition to or otherwise incident to the exercise of the powers of sale authorized by this Deed of Trust. The proceeds of sale shall be applied by Trustee as follows: (a) first, to pay all proper advertising expenses, auctioneer's allowance, the expenses, if any, required to correct any irregularity in the title, premium for Trustee's bond, auditor's fee, attorneys' fees, and all other expenses of sale incurred in or about the protection and execution of this Deed of Trust, and all moneys advanced for taxes, assessments, insurance, and with interest thereon at the rate provided in the Note, and all taxes and assessments due upon the Property at time of sale, and to retain as compensation a reasonable Trustee's commission; (b) second, to pay the whole amount then remaining unpaid on the Indebtedness; (c) third, to pay liens of record against the Property according to their priority of lien and to the extent that funds remaining in Trustee's hands are available; and (d) last, to pay the remainder of the proceeds, if any, to Grantor, Grantor's heirs, personal representatives, successors or assigns upon the delivery and surrender to the purchaser of possession of the Property, less costs and expenses of obtaining possession.

**UCC Remedies.** With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code.

**Collect Rents.** Lender shall have the right, without notice to Grantor to take possession of and manage the Property and collect the Rents, including amounts past due and unpaid, and apply the net proceeds, over and above Lender's costs, against the Indebtedness. In furtherance of this right, Lender may require any tenant or other user of the Property to make payments of rent or use fees directly to Lender. If the Rents are collected by Lender, then Grantor irrevocably designates Lender as Grantor's attorney-in-fact to endorse instruments received in payment thereof in the name of Grantor and to negotiate the same and collect the proceeds. Payments by tenants or other users to Lender in response to Lender's demand shall satisfy the obligations for which the payments are made, whether or not any proper grounds for the demand existed. Lender may exercise its rights under this subparagraph either in person, by agent, or through a receiver.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist

## DEED OF TRUST
### (Continued)

whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount.  Employment by Lender shall not disqualify a person from serving as a receiver.

**Tenancy at Sufferance.**  If Grantor remains in possession of the Property after the Property is sold as provided above or Lender  otherwise becomes entitled to possession of the Property upon default of Grantor, Grantor shall become a tenant at sufferance of Lender or the purchaser of the Property and shall, at Lender's option, either  (1)  pay a reasonable rental for the use of the Property, or  (2)  vacate the Property immediately upon the demand of Lender.

**Other Remedies.**  Trustee or Lender shall have any other right or remedy provided in this Deed of Trust or the Note or by law.

**Notice of Sale.**  Lender shall give Grantor reasonable notice of the time and place of any public sale of the Personal Property or of the time after which any private sale or other intended disposition of the Personal Property is to be made.  Reasonable notice shall mean notice given at least fourteen (14) days before the time of the sale or disposition.  Any sale of the Personal Property may be made in conjunction with any sale of the Real Property.

**Sale of the Property.**  To the extent permitted by applicable law, Grantor hereby waives any and all rights to have the Property marshalled.  In exercising its rights and remedies, the Trustee or Lender shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales.  Lender shall be entitled to bid at any public sale on all or any portion of the Property.

**Attorneys' Fees; Expenses.**  If Lender institutes any suit or action to enforce any of the terms of this Deed of Trust, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal.  Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid.  Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees, title insurance, a reasonable Trustee's commission and reasonable attorney fees incurred by the Trustee in performing its duties under the Deed of Trust, to the extent permitted by applicable law.  Grantor also will pay any court costs, in addition to all other sums provided by law.

**Rights of Trustee.**  Trustee shall have all of the rights and duties of Lender as set forth in this section.

**POWERS AND OBLIGATIONS OF TRUSTEE.**  The following provisions relating to the powers and obligations of Trustee are part of this Deed of Trust:

**Powers of Trustee.**  In addition to all powers of Trustee arising as a matter of law, Trustee (and each of them if more than one) shall have the power to take the following actions with respect to the Property upon the written request of Lender and Grantor:  (a) join in preparing and filing a map or plat of the Real Property, including the dedication of streets or other rights to the public; (b) join in granting any easement or creating any restriction on the Real Property; and  (c) join in any subordination or other agreement affecting this Deed of Trust or the interest of Lender under this Deed of Trust.

**Obligations to Notify.**  Trustee shall not be obligated to notify any other party of a pending sale under any other trust deed or lien, or of any action or proceeding in which Grantor, Lender, or Trustee shall be a party, unless the action or proceeding is brought by Trustee.

**Trustee.**  Trustee shall meet all qualifications required for Trustee under applicable law.  In addition to the rights and remedies set forth above, with respect to all or any part of the Property, the Trustee shall have the right to foreclose by notice and sale, and Lender will have the right to foreclose by judicial foreclosure, in either case in accordance with and to the full extent provided by applicable law.

**Successor Trustee.**  Lender, at Lender's option, may from time to time appoint a successor Trustee to any Trustee appointed under this Deed of Trust by an instrument executed and acknowledged by Lender and recorded in the office in the jurisdiction where this Deed of Trust has been recorded.  The instrument shall contain, in addition to all other matters required by state law, the names of the original Lender, Trustee, and Grantor, the book and page where this Deed of Trust is recorded, and the name of the successor trustee and the county, city or town in which he or she resides, and the

DEED OF TRUST
(Continued)

instrument shall be executed and acknowledged by Lender or its successors in interest. The successor trustee, without conveyance of the Property, shall succeed to all the title, power, and duties conferred upon the Trustee in this Deed of Trust and by applicable law. This procedure for substitution of Trustee shall govern to the exclusion of all other provisions for substitution.

**Power to Act Separately.** If more than one Trustee is named in this Deed of Trust, any Trustee may act alone, without the joinder of any other Trustee, to exercise any or all the powers given to the Trustees collectively in this Deed of Trust or by applicable law.

**NOTICES.** Any notice required to be given under this Deed of Trust, including without limitation any notice of default and any notice of sale shall be given in writing, and shall be effective when actually delivered, if hand delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Deed of Trust. All copies of notices of foreclosure from the holder of any lien which has priority over this Deed of Trust shall be sent to Lender's address, as shown near the beginning of this Deed of Trust. Any person may change his or her address for notices under this Deed of Trust by giving formal written notice to the other person or persons, specifying that the purpose of the notice is to change the person's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors. It will be Grantor's responsibility to tell the others of the notice from Lender.

**ADVERTISEMENT REQUIRED REGARDING REAL PROPERTY.** With respect to all or any part of the Real Property, the advertisement required by the Trustee of a sale under this Deed of Trust shall be once a week for two (2) consecutive weeks in a newspaper having a general circulation in the City or County wherein the property to be sold, or any portion thereof, lies.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Deed of Trust:

**Amendments.** What is written in this Deed of Trust and in the Related Documents is Grantor's entire agreement with Lender concerning the matters covered by this Deed of Trust. To be effective, any change or amendment to this Deed of Trust must be in writing and must be signed by whoever will be bound or obligated by the change or amendment.

**Caption Headings.** Caption headings in this Deed of Trust are for convenience purposes only and are not to be used to interpret or define the provisions of this Deed of Trust.

**Merger.** There shall be no merger of the interest or estate created by this Deed of Trust with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Governing Law. This Deed of Trust will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the Commonwealth of Virginia without regard to its conflicts of law provisions. This Deed of Trust has been accepted by Lender in the Commonwealth of Virginia.**

**Choice of Venue.** If there is a lawsuit, Grantor agrees upon Lender's request to submit to the jurisdiction of the applicable courts for Caroline County, Commonwealth of Virginia.

**No Waiver by Lender.** Grantor understands Lender will not give up any of Lender's rights under this Deed of Trust unless Lender does so in writing. The fact that Lender delays or omits to exercise any right will not mean that Lender has given up that right. If Lender does agree in writing to give up one of Lender's rights, that does not mean Grantor will not have to comply with the other provisions of this Deed of Trust. Grantor also understands that if Lender does consent to a request, that does not mean that Grantor will not have to get Lender's consent again if the situation happens again. Grantor further understands that just because Lender consents to one or more of Grantor's requests, that does not mean Lender will be required to consent to any of Grantor's future requests. Grantor waives presentment, demand for payment, protest, and notice of dishonor.

**Severability.** If a court finds that any provision of this Deed of Trust is not valid or should not be enforced, that fact by itself will not mean that the rest of this Deed of Trust will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Deed of Trust even if a provision of this Deed of Trust may be found to be invalid or unenforceable.

**Successors and Assigns.** Subject to any limitations stated in this Deed of Trust on transfer of Grantor's interest, this Deed of Trust shall be binding upon and inure to the benefit of the parties, their heirs, personal representatives, successors and assigns. If ownership of the Property becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with

**DEED OF TRUST**
(Continued)

Grantor's successors with reference to this Deed of Trust and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Deed of Trust or liability under the Indebtedness.

**Time is of the Essence.** Time is of the essence in the performance of this Deed of Trust.

**Waive Jury.** All parties to this Deed of Trust hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by any party against any other party.

**Homestead Waiver.** Grantor waives the benefit of Grantor's homestead exemption as to the Property described in this Deed of Trust.

NOTICE: THE DEBT SECURED HEREBY IS SUBJECT TO CALL IN FULL OR THE TERMS THEREOF BEING MODIFIED IN THE EVENT OF SALE OR CONVEYANCE OF THE PROPERTY CONVEYED.

DEFINITIONS. The following words shall have the following meanings when used in this Deed of Trust:

**Beneficiary.** The word "Beneficiary" means Northern Neck State Bank, and its successors and assigns.

**Borrower.** The word "Borrower" means JAMES O. BEALE and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Deed of Trust.** The words "Deed of Trust" mean this Deed of Trust among Grantor, Lender, and Trustee.

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Deed of Trust in the events of default section of this Deed of Trust.

**Grantor.** The word "Grantor" means JAMES O. BEALE.

**Guaranty.** The word "Guaranty" means the guaranty from guarantor, endorser, surety, or accommodation party to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Improvements.** The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

**Indebtedness.** The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents and any amounts expended or advanced by Lender to discharge Grantor's obligations or expenses incurred by Trustee or Lender to enforce Grantor's obligations under this Deed of Trust, together with interest on such amounts as provided in this Deed of Trust.

**Lender.** The word "Lender" means Northern Neck State Bank, its successors and assigns. The words "successors or assigns" mean any person or company that acquires any interest in the Note.

**Note.** The word "Note" means the promissory note dated October 31, 2006, in the original principal amount of $112,000.00 from Grantor to Lender, together with all modifications of and renewals, replacements, and substitutions for the promissory note or agreement. The maturity date of the Note is November 1, 2036. NOTICE TO GRANTOR: THE NOTE CONTAINS A VARIABLE INTEREST RATE.

| Loan No: ▇0465 | DEED OF TRUST (Continued) | Page 11 |
|---|---|---|

**Personal Property.** The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Grantor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

**Property.** The word "Property" means collectively the Real Property and the Personal Property.

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in this Deed of Trust.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all present and future rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property.

**Trustee.** The word "Trustee" means Michael A.   CONDYLES, whose address is 1111 East Main Street, Suite 800, Richmond, VA  23219-3103, N. Byrd NEWTON, whose address is P. O. Box 68, Warsaw, VA  22572 and Russell G. BROWN, whose address is P. O. Box 68, Warsaw, VA  22572 and any substitute or successor trustees. If more than one person is named as trustee, the word "Trustee" means each such person.

GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS DEED OF TRUST, AND GRANTOR AGREES TO ITS TERMS.

THIS DEED OF TRUST IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS DEED OF TRUST IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.

GRANTOR:

X _____ (Seal)
JAMES O. BEALE

---

## INDIVIDUAL ACKNOWLEDGMENT

STATE OF ___Virginia_____ )
                                      ) SS
COUNTY OF ___Lancaster_____ )

On this day before me, the undersigned Notary Public, personally appeared JAMES O. BEALE, to me known to be the individual described in and who executed the Deed of Trust, and acknowledged that he or she signed the Deed of Trust as his or her free and voluntary act and deed, for the uses and purposes therein mentioned.

Given under my hand and official seal this ___31st___ day of ___October___, 20_06_.

By _____     Residing at _Heathsville, Va_____

Notary Public in and for _Comm. of VA. at Large_     My commission expires _9/30/07_____

12.

## Schedule A

ALL THAT CERTAIN LOT OR PARCEL OF LAND, CONTAINING 1.219 ACRES, MORE
OR LESS, TOGETHER WITH ALL IMPROVEMENTS THEREON AND ALL RIGHTS,
WAYS, PRIVILEGES AND APPURTENANCES IN ANYWISE THEREUNTO
APPERTAINING, SITUATE, LYING AND BEING ON THE SOUTH SIDE OF WEEMS
ROAD, STATE HIGHWAY ROUTE NO. 222, IN WHITE STONE MAGISTERIAL
DISTRICT, LANCASTER COUNTY, VIRGINIA, AS SHOWN ON THAT CERTAIN PLAT
OF SURVEY ENTITLED "PLAT SHOWING PHYSICAL IMPROVEMENTS TO
PROPERTY TO BE CONVEYED TO JAMES O. BEALE", MADE BY SIMMONS
NEWSOME, P.C., DATED JUNE 23, 2005, WHICH PLAT IS RECORDED IN THE
CLERK'S OFFICE OF THE CIRCUIT COURT OF LANCASTER COUNTY, VIRGINIA, IN
INSTRUMENT #050002191 AT PAGE 3.

BEING THE SAME PROPERTY CONVEYED UNTO JAMES O. BEALE BY DEED
DATED JUNE 27, 2005 AND RECORDED IN THE AFORESAID CLERK'S OFFICE IN
INSTRUMENT #050002191.

INSTRUMENT #060003407
RECORDED IN THE CLERK'S OFFICE OF
COUNTY OF LANCASTER ON
NOVEMBER 6, 2006 AT 01:44PM
CONSTANCE L. KENNEDY, CLERK

RECORDED BY: DMF

-12-